Smith, J.
If the ordinance set up in the pleadings in this case, passed by the board of legislation of this city, directing the payment of the claim of the relator, was properly and legally passed, the city by its legislative body has admitted the justice of that claim and that it of right ought to be paid, though the relator, for technical rather than for substantial reasons, could not collect the same from the city by an action. This is substantially stated in the ordinance referred to. Under this state of fact we think that the board of legislation might legally pass an ordinance directing the payment thereof from the contingent fund of the city, which, if approved by the mayor, would justify and make it obligatory upon the officers of the corporation to carry out its provisions. Many cases were cited on the argument of the case which seem to sustain this doctrine.
2nd. As this ordinance appropriated the amount to be paid to the relator from the contingent fund of'the city, and when submitted to the mayor he refused to approve the same, and returned it to the board with his objections thereto, and the board having again considered it, approved the same by the *104 votes of more than four-fifths of all the members elected thereto, the question arises whether this ordinance took effect as it had received the signature of the mayor.
As the statute stood prior to the passage of the act of March 26, 1891, (88 Ohio Laws, 222), we are of the opinion that it was essential to the validity of an ordinance passed by the legislative authority of the city, appropriating money from the contingent fund, that it should be approved by the mayor. See section 2690h, Revised Statutes. Whether this provision has been repealed by the passage of the act of 1891, is a question as to which we have had grave doubts. This section 2690h was the only one which made the approval essential to the validity of an ordinance, and as has been said, this was only to an ordinance appropriating money from the contingent fund. The rule as to what was necessary to the validity of all other ordinances was established by sections 1665-6-7-8 of the Revised Statutes, and which provided that all ordinances, resolutions or orders for the expenditure of money must be passed by the votes of a majority of the members elected to each of the two boards (then existing), and then presented to the mayor for his approval, and if he refused to sign it, and returned it with his objections, if it was then approved by the votes of two-thirds of all the members elected to each board, in separate session, it was to take effect as if signed by the mayor.
It must be conceded, we think, that under the law as it stood prior to March 26, 1891, our statutes provided these two modes, one for the passage of ordinances making appropriations of money from the contingent fund, and the other appropriating money from other funds ; and both were mandatory in their character.
By the act of March 26, 1891, no direct mention is made of any one of these sections. The title of the act is “ An act supplementary to and amendatory of title 12 of the Revised Statutes of Ohio,” in which the sections named all appear, to *105 gether with many others which relate to the government of cities of the first grade of the first class, like Cincinnati. It supplements section 1655 (which provided for a common-council composed of two boards in a city of the first grade of the first class, and of one board in a city of the third grade of the first class) by section 1655a, which provided that in cities of the first grade of the first class the legislative power and authority should be vested in a board of legislation. And this section (which is a very lengthy one) provides as to the election and qualification of the members of the board, and abolishes the existing council. It further provides at length for the organization of the board, the election of its officers, and their duties, and for many other matters, and specifically as to the mode and manner in which all ordinances, resolutions or orders are to be passed, and making the votes of a majority of all the members elected to the board necessary to pass the same, and that the vote on every such ordinance, resolution or order relating to the expenditure of money, shall be taken by an aye and nay vote and entered on the journal of the board. It- further directs as to the reading of such ordinances at three regular meetings before such vote is taken, and that every such ordinance, resolution or order shall, before it takes effect, be presented, duly certified by the clerk, to the mayor of the city for his approval. The mayor, if he approves such ordinance, shall sign it. If he refuses to do so and returns it to the board with his objections, it is then to be considered by the board again, and if approved by the votes of four-fifths of all the members elected to the board, it shall then take effect as if it had received the signature of the mayor. Other sections of the old law, not necessary to mention, are re-enacted with many changes by the new law, and the old sections repealed, and others are supplemented by additional sections, creating new officers for the city, and prescribing the duties of such officers, etc.and by section 5 the old sections, which had been amended, are repealed by number,- and it then contains this additional language, “ and any or all other sections *106 or portions of said Reviséd Statutes, in so far as the same are inconsistent with any of the provisions of this act, are hereby repealed.”
With some hesitation the majority of the court have reached the conclusion that this statute of March 26, 1891, was intended to take the place of all the sections as to the passage of the ordinances then in force, as well section 2690h, as to appropriations from the contingent fund, as sections 1665-6-7-8, appropriating money from other funds. As has been said, there is no express mention of any kind in the new law of any of these sections by- number, or in any other way. And yet it seems manifest, and it is not questioned, that the provisions of the new'law are so inconsistent with those sections 1665-6-7-8, that the latter under the terms of section 5 must fall. Why then should section 2690A stand? For the provisions of that and of the new law are also inconsistent. The new statute constitutes a wholly different legislative authority for the city. It is now lodged in one body instead of two. The constitution of the board and the mode of procedure which are pointed out explicitly, and with so much detail in the new statute, would indicate strongly an intention on the part of the general assembly to codify the law in respect thereto, and to bring into one statute a single provision for the mode of the passage of all ordinances appropriating the money of the city, and for the manner in which such ordinances may be passed over the veto of the mayor; and requiring the votes of four-fifths of all the members of the board, instead of the votes of two-thirds of the members of each board, as it was before. The provisions of 2690h, requiring the approval of the mayor essential to the validity of an ordinance appropriating money from the contingent fund, was an anomalous one.' We know nothing similar to it in our system of government, state or municipal, and it would not seem at all strange that the legislature should change a provision giving to one man the absolute veto power upon the acts of the board of legislation. We are of the opinion, then, that the ordinance *107 in question was valid, and that the judgment of the court of common pleas refusing the writ (on the first of the two grounds argued, as was stated) was erroneous and should be reversed.
I. J. Miller, for plaintiff in error.
Theodore Hor siman and John Galvin, contra.
Judge Swing dissents from the opinion of the court on the second ground, and from the judgment.